UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FAMILIAS UNIDAS POR LA JUSTICIA,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SAKUMA BROTHERS FARMS, INC,<br><br>　　　　　　Defendant. | CASE NO. C14-737-MJP<br><br>ORDER GRANTING MOTION TO REMAND |

This matter comes before the Court on Plaintiff's motion to remand. (Dkt. No. 9.) Plaintiff also seeks an award of attorney fees for bringing this motion. (Id.) Having reviewed the motion, the response (Dkt. No. 10), all related papers, and having conducted oral argument on May 22, 2014, the Court GRANTS the motion and REMANDS the case to Skagit County Superior Court. Further, the Court GRANTS Plaintiff's request for reasonable costs and attorney fees incurred in bringing this motion.

//

//

ORDER GRANTING MOTION TO REMAND- 1

**Background**

Plaintiff Familias Unidas Por Justicia ("Familias") is an organization of 400 migrant farm workers and their families. Member workers pick berries at Sakuma Farms. (Dkt. No. 1-2 at 3.) Sakuma is a family-owned fruit farm in the Skagit Valley, Washington. (Dkt No. 11 at 1.)

Throughout the 2013 picking season, workers complained about wages and working conditions at Sakuma Farms. (Dkt. No. 1-2 at 3-4.) These disputes culminated in work stoppages and other strikes. (Id. at 4.) Workers formed Familias as an advocacy organization, for the purpose of "collective action and concerted activity with regard to wages hours and working conditions." (Id. at 2.) Some of the disputes between Sakuma and Familias have been resolved. (Id.) The parties have not agreed to a labor contract for the 2014 harvest. (Id. at 6.)

This case is about Sakuma's recent policy and other changes before the 2014 picking season. To address the pending motion, the Court needs only to describe Sakuma's new housing policy. Before the 2014 harvest season, Sakuma provided housing to both families and single individuals as part of their employment. In late April, Sakuma notified some workers that it ended family housing, and instead would provide housing to "workers only." (Dkt. No. 3-6 at 7.) According to the letter, "[t]his means that housing for non-working family members will no longer be available. Cabins will be designated Male Only or Female Only. We do not have housing for married couples." (Id.)

Plaintiff filed this case on May 15, 2014, in Skagit County Superior Court. Familias asserts claims under the Washington Law Against Discrimination ("WLAD") because Sakuma will no longer provide family housing. Plaintiff argues this change amounts to housing discrimination, a violation of RCW 49.60. Plaintiff also seeks relief under the Little Norris-LaGuardia Act, RCW 49.32. Plaintiff seeks a temporary restraining order, to be free of coercion,

and to "be allowed to apply for work and obtain family housing for the 2014 season." (Dkt. No. 1-2 at 2.) Sakuma removed this case to federal court based on federal question jurisdiction. Plaintiff filed an emergency motion to remand the case so it may seek a temporary restraining order from the state court before berry picking season begins.

**Discussion**

**A. No federal question jurisdiction**

Sakuma removed this case to federal court on the grounds it presents a federal question under 28 U.S.C. §1441. (Dkt. No. 1). Sakuma theorizes that federal question jurisdiction exists because Plaintiff's WLAD claim is "completely preempted by the Immigration and Nationality Act of 1986 as amended by the Immigration Reform Control Act of 1986 ("IRCA"), which requires H-2A employers like Sakuma to provide housing only if it is the 'prevailing practice' in the area and occupation of intended employment." (Dkt. No. 10 at 2.) Sakuma argues that because it is not the prevailing practice in Washington to provide housing for worker employees, let alone their non-employee families, it does not have to under the federal regulations. (Id.)

The burden of establishing federal jurisdiction is on Sakuma, the party seeking removal. The removal statute is strictly construed against removal jurisdiction. Prize Frize, Inc. v. Matrix, Inc., 167 F.3d 1261, 1265 (9th Cir. 1999). Any doubts about removability are resolved in favor of remanding the case to state court. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

Sakuma's claim of preemption does not confer jurisdiction on this Court. Under well-established principles, "a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." Franchise Tax Bd. of California v. Construction Laborers Vacation Trust for S. California,

ORDER GRANTING MOTION TO REMAND- 3

463 U.S. 1, 14 (1983)(emphasis added).  But if a federal cause of action completely preempts a state law claim, any complaint that contains allegations within the scope of the federal cause of action necessarily "arises under" federal law.  Id. at 24.  This conversion of state law claims to federal claims is "extraordinary" and occurs only where Congress has indicated its intent to exclude the state from any role in the regulated area.  K2 Am. Corp. v. Roland Oil & Gas, LLC, 653 F.3d 1024, 1029 (9th Cir. 2011).  "The touchstone of preemption is congressional intent," and Sakuma, as the party claiming federal jurisdiction, must show that Congress intended to exclude all state law claims.  Martin v. Midwest Express Holdings, Inc., 555 F.3d 806, 808 (9th Cir. 2009).  It is into this latter category – field preemption—that Sakuma attempts to shoe horn this case and invoke this Court's subject matter jurisdiction.

The Court find's Sakuma's claim of field preemption unpersuasive.  First, a review of the specific provision of ICRA at issue, 8 USCA § 1188(c)(4), evidences no congressional intent to exclude the states in H-2A worker regulations.  That provision reads:

> Employers shall furnish housing in accordance with regulations. The employer shall be permitted at the employer's option to provide housing meeting applicable Federal standards for temporary labor camps or to secure housing which meets the local standards for rental and/or public accommodations or other substantially similar class of habitation: Provided, That in the absence of applicable local standards, State standards for rental and/or public accommodations or other substantially similar class of habitation shall be met…Provided further, That when it is the prevailing practice in the area and occupation of intended employment to provide family housing, family housing shall be provided to workers with families who request it….

8 USCA § 1188(c)(4) (emphasis added).  The regulations implementing the statute require the same.  20 CFR § 655.122(d)(5).  ("Family housing. When it is the prevailing practice in the area of intended employment and the occupation to provide family housing, it must be provided to workers with families who request it.")  Notably, the statute contemplates local and state

1  standards/regulations will coexist and supplement the ICRA.  If the Court looks at the statute as

2  whole, this too evidences no intent by Congress to occupy the field of H-2A worker regulations.

3  Just the opposite is true: "[d]uring the period of employment that is the subject of the Application

4  for Temporary Employment Certification, the employer must comply with all applicable Federal,

5  State and local laws and regulations, including health and safety laws." 20 CFR § 655.135(e).

6  Despite the statute's reference to other applicable state and federal laws, Sakuma claims "the

7  provision of family housing by H-2A employers is a complete regulatory system, with specific

8  terms that are only applicable to the mandatory housing provided by employers bringing legal

9  foreign workers in under the H-2A program." (Dkt. No. 10 at 6.)  The Court finds this

10 characterization strains credulity.

11        Consistent with the statute and its regulation's incorporation of and reference to other

12 laws applying to H-2A workers, numerous federal courts have rejected the notion that ICRA

13 occupies the entire regulatory field of immigrants and/or immigrant workers.  See e.g. Madeira v.

14 Affordable Hous. Found., Inc., 469 F.3d 219, 239 (2d Cir. 2006); Perez-Farias v. Global

15 Horizons, Inc., CV-05-3061-RHW, 2008 WL 833055 (E.D. Wash. Mar. 27, 2008)(collecting

16 cases allowing claims under the the Fair Labor Standards Act and Migrant and Seasonal

17 Agricultural Worker Protection Act, despite claims of preemption); Ruiz v. Fernandez, CV–11–

18 3088–RMP, 2012 WL 1442556 (E.D. Wash. April 26, 2012)(IRCA does not preempt state

19 contract claim.)  In particular, when evaluating preemption, courts have found the lack of a

20 federal cause of action under the IRCA means Congress did not intend for the statute to occupy

21 the entire field.  Ruiz, 2012 WL 1442556 at 3.

22        In stark contrast to these authorities, Sakuma offers nothing—except its own construction

23 of the statute—to support the notion that the ICRA completely preempts the field of state

24

ORDER GRANTING MOTION TO REMAND- 5

1  remedies and claims available to H-2A workers.  Nor does <u>Farmer v. Employment Security</u>
2  <u>Commission of North Carolina</u>, 4 F.3d 1274 (4th Cir. 1993), support this Court's exercise of
3  subject matter jurisdiction in this case.  Sakuma cites to <u>Farmer</u> for the proposition that the
4  specific requirements of the IRCA regarding when family housing is mandated control over any
5  state-based housing discrimination laws.  <u>Farmer</u> addressed the intersection of the Fair Housing
6  Act of 1962 and the IRCA.   The Fourth Circuit concluded that the IRCA controlled because it
7  contained the more specific regulation.  Thus, "participating H–2A farmers must provide family
8  housing to temporary agricultural laborers, whether foreign or domestic, only when such is the
9  prevailing practice in the area and occupation of intended employment."  <u>Id.</u> at 1284.  <u>Farmer</u>
10 does not apply to the pending motion.  To show federal jurisdiction, Sakuma must do more than
11 show it has a cognizable preemption defense.  It must show that the preemption issue rises to the
12 level of a federal question.  Even if <u>Farmer</u> signals Sakuma's potential success, it does not
13 control the issue of this Court's jurisdiction or assist in sorting through these issues.  As the
14 Supreme Court explained: the state court is just as capable of deciding the merits of Defendant's
15 preemption defense as is this Court.  <u>Franchise Tax Bd.</u>, 463 U.S. at 14.  Likewise, the
16 Department of Labor opinions cited by both parties go to the merits of the preemption defense
17 and not to whether this case rises to the level of a federal question.  The Court does not find these
18 persuasive.
19     Finally, to the extent Sakuma is arguing a conflict exists between federal and state law,
20 the Court follows the ruling in <u>Arizona v. U.S.</u>, ___ U.S. __, 132 S.Ct. 2492, 2501 (2012), which
21 recognizes the benefit of definitive interpretations from state courts before federal courts assess
22 any conflict.  In this case, Washington courts should address the scope of WLAD before any
23 ruling on preemption.
24

ORDER GRANTING MOTION TO REMAND- 6

**B. Attorney Fees**

Plaintiff seeks an award of fees and costs for bringing this motion to remand. "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C.A. § 1447. An award of attorneys fees is within the wide discretion of the district court. <u>Moore v. Permanente Medical Grp. Inc.</u>, 981 F.2d 443, 448 (9th Cir. 1992). Where an action is remanded to state court, an award of costs, including attorney's fees, is inappropriate where the defendant's attempt to remove the case to federal court was fairly supportable. <u>Schmitt v. Ins. Co. Of North America</u>, 845 F.2d 1546, 1552 (9th Cir .1988). Because Sakuma's removal of this case is legally unsupportable, the Court awards Plaintiff reasonable attorney fees and costs.

**Conclusion**

Because Sakuma fails to show Congress, in enacting the IRCA, chose to regulate the entire field regarding foreign migrant workers, this Court lacks subject matter jurisdiction. The Court makes no pronouncement as to the merits of Sakuma's preemption claim; the only issue before this Court is a question of federal jurisdiction. The Court GRANTS the motion and REMANDS the case to Skagit County Superior Court. The Court also GRANTS the motion for reasonable attorney fees and costs incurred in bringing the motion. Plaintiff must provide affidavits and supporting documentation in support of its request within ten days of this order.

The clerk is ordered to provide copies of this order to all counsel.

Dated this <u>22nd</u> day of May, 2014.

Marsha J. Pechman
Chief United States District Judge